**David MOORE, Appellant,**

v.

**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION and Hamilton County Division of Family and Children, Appellees.**

No. 49A02–9510–CV–611.

Court of Appeals of Indiana.

May 19, 1997.

Crystal Francis, Julie Bennett, Legal Services Organization of Indiana, Inc., Indianapolis, for Appellant.

Pamela Carter, Attorney General, Frances Barrow, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant, David Moore (Moore) appeals. the trial court's August 16, 1995 order in favor of the Family and Social Services Ad-

ministration (the agency). The agency had affirmed the February 24, 1994 decision of the Administrative Law Judge (ALJ) denying Moore medical assistance to the disabled.

We reverse.

■ The sole issue for review is whether the agency erred in determining that Moore's physical ailments failed to meet the statutory definition for disability under I.C. 12–14–15–1 (Burns Code Ed.Supp.1996).

Moore suffers from numerous medical conditions. The two relevant to this appeal are sleep apnea and cough syncope. Sleep apnea is a condition which causes Moore to stop breathing at night for periods of time, thus causing him to awaken. In fact, in one sleep study conducted upon Moore, he had as many as 87 apnea episodes in one hour. As a result, Moore gets a maximum of three hours of sleep per night, and he has difficulty staying awake during the day. Whether or not sleep apnea is treatable is questionable.

Cough syncope is a condition under which Moore coughs so violently that he passes out. It is undisputed that Moore's cough syncope is not treatable.

In order to qualify for assistance as a disabled individual under the statute, a person must:

(2) [Have] a physical or mental impairment, disease, or loss that is verifiable by a physician licensed under I.C. 25–22.5 that appears reasonably certain to continue throughout the lifetime of the individual without significant improvement and that substantially impairs the individual's ability to perform labor or services or to engage in a useful occupation. Employment in a sheltered workshop or under an approved vocational rehabilitation plan is not considered a useful occupation for the purposes of this chapter. *Id.*

■ In order to qualify for assistance, Moore must show that his disabilities both are reasonably certain to continue throughout his life without significant improvement and that they substantially impair his ability to work. Ordinarily, we would examine

Moore's medical conditions individually;[1] however, since we detect fatal defects in the ALJ's findings of fact, preventing an informed review by this court, we will reverse and remand this cause for proper findings.

The ALJ's findings of fact and decision was entered on February 24, 1994. That decision was appealed to the agency, whereupon it was affirmed. The latter decision was subsequently reviewed by the Marion Superior Court which entered findings and conclusions. In actuality, the review court simply adopted the proposed findings of the agency. This same agency pointed out to the review court, in its own brief that the "court is bound by the findings of fact made by the agency if those findings are supported by substantial evidence." *Hamilton County Dep't. Pub. Welfare v. Smith* (1991) Ind.App., 567 N.E.2d 165, 168. The review court, when reviewing the decision of an administrative agency, simply does not have the power to enter findings of fact, and as such, its findings shall be ignored.

 That brings this court to the findings as entered by the ALJ. As our Supreme Court has previously noted, "findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of *ultimate* fact." *Perez v. United States Steel Corp.* (1981) Ind., 426 N.E.2d 29, 33 (emphasis in original). Therefore, findings which indicate that the testimony or evidence was this or the other are not findings of fact. *Id.; Hehr v. Review Bd. of Ind. Emp. Sec. Div.* (1989) Ind.App., 534 N.E.2d 1122, 1127, n. 4. A finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty.

 In the present case, the ALJ's findings of fact are deficient. Numbers 10 through 26 all begin with Mr. Moore stated this, or Dr. Nazer indicates this, and so forth. None actually assert what the facts are according to the ALJ. These "findings" are essential to the ALJ's conclusion. The conclusion may not rest upon the inadequate findings. The cause must be remanded for proper findings of fact.

Because the ALJ may be tempted upon remand to simply reword her "findings", we deem it appropriate to address the merits of Moore's appeal. It appears that even if proper findings had been entered, the agency would not prevail.

First, it is undisputed that Moore's cough syncope will continue throughout his lifetime. However, as the ALJ's findings connote, Moore's condition improved upon taking the drug Tegretol. On April 20, 1992, Dr. Leeanne Nazer noted that Moore "had no more black-out spells since being on Tegretol." Record at 166. Additionally, we note that Moore's wife testified that Moore passed out two to three times per week for about one minute. The ALJ would be entitled to conclude, as she did, that such infrequent interruption would not substantially impair Moore's ability to hold a job.

As noted above, the treatability of Moore's sleep apnea is questionable. The ALJ simply concluded that:

[t]he medical evidence and testimony presented substantiates the appellant's documented physical impairments have improved with treatment and although they may impair his ability to perform more strenuous types of labor the evidence does not substantiate the appellant would not be able to perform a less strenuous occupation. Record at 369.

The record simply lacks evidence that Moore's sleep apnea has shown substantial improvement.

Moore received treatment for apnea in the form of a CPAP device. The device consists of a mask that pushes air into Moore's lungs to continue his breathing at night. However, due to claustrophobia, Moore was unable to continue use of the CPAP. Subsequently, Moore's doctors tried a Bi–PAP device. This device replaced the mask with nasal pillows. Moore began to show improvement with use of the Bi–PAP; however, he eventually had to discontinue using it because of nasal con-

---

1. We are not foreclosing the possibility that two disabilities may not, separately, substantially impair an individual's ability to perform work, yet, when the two are presented together, may fulfill the requirements of the statute. We simply feel that such an analysis is inappropriate here.

gestion, nasal drainage and feelings of suffocation.

■ Such temporary improvement in the symptoms of a disability will not suffice to constitute significant improvement under the statute. Moore directs our attention to *Hamilton County, supra,* 567 N.E.2d at 165, wherein we concluded that the statute requires a significant improvement in the underlying disease or impairment and not simply the symptoms of the impairment. We need not here address the distinction between an illness and its symptoms. The statute requires that the disability be "reasonably certain to continue throughout the lifetime of the individual without significant improvement." I.C. 12–14–15–1. A temporary improvement for a short period of time will not qualify as significant improvement under the statute.[2]

Finally, in order to qualify for benefits, Moore must be able to show that he has been substantially impaired in his ability to work. The ALJ noted that Moore *said* he was able to stay awake during classes he is taking at Ivy Tech and has not found studying to be a problem. However, taking Moore's statement in context, the record indicates that Moore *said* he *does* fall asleep during his classes but is able to stay awake when he is concentrating and the subject matter is interesting. On the other hand, the ALJ makes note that Dr. Nazer pointed out that Moore simply cannot stay awake during the day and cannot carry out normal activities.[3] Also, in a letter of July 31, 1992, Dr. Nazer wrote that Moore "is totally and permanently disabled. I do not foresee him being able to maintain any employment because of his inability to concentrate and stay awake during the day." Record at 350–51.

The only "finding" upon which the ALJ based her decision that Moore's ability to work was not substantially impaired was that Moore explained he was able to stay awake during school during times in which he was interested. First, we harbor reservations with regard to using evidence of an individual's ability to attend school to reach a conclusion that the individual's ability to work is not impaired.[4] As Moore points out in his brief, school is more flexible than employment. While an employer is paying the employee for his attendance and attention, a student (especially in a collegiate setting) frequently has wide latitude in the amount of effort and attention he puts toward class.

Second, we note that a finding by the ALJ that Moore "is able to stay awake if he is interested in something" would not be supported by the evidence. Record at 369. An examination of the record as a whole indicates that Moore is indeed able to stay awake while concentrating and talking, but he *does* fall asleep during school. In order for Moore to find a job, he would need to find one that demanded his every attention—perhaps as a pilot or a truck driver; however, we doubt that the agency would encourage him to follow such a career path. The type of job for which Moore would be best suited would also be the type of job where Moore is likely to lose interest and thus consciousness.

■ Finally, we note that the statute in question does not require that the ALJ find that Moore is unable to join the workforce. The statute refers to a substantial impairment in his ability to be a part of that workforce.

■ In the ALJ's findings, she notes that Moore stated that he has "not really considered the surgery which Dr. Nazer has

---

2. The agency failed to make any argument in its brief that Moore's sleep apnea has improved.

3. This illustrates precisely the problem we have with the ALJ's findings. On one hand we have a finding that Moore can stay awake (although as discussed above, it is taken out of context) and on the other, we have a finding that he cannot stay awake or carry out normal activities. It is the duty of the ALJ to resolve such evidentiary conflicts.

4. Moore directs us to *Hamilton County, supra* for the proposition that we may "look to federal law in interpreting Indiana's Medicaid statute." Appellant's Br. 19. However, *Hamilton County* simply pointed out that we may find it useful to look to federal *case* law interpreting a statute with similar language to the Indiana statute. Therefore, while we find the fact that the social security administration does not consider schooling as *gainful* work activity interesting, it has no bearing upon our decision here.

re[c]ommended." Record at 368. However, the ALJ fails to make any findings as to whether this surgery would alleviate or solve Moore's sleep apnea or if Moore would actually refuse the surgery.[5] If so, Moore may be precluded from arguing that this is a condition certain to continue throughout his lifetime.[6] Therefore, upon remand, the agency must make a determination as to whether the surgical procedures alluded to in ALJ's findings will provide Moore with significant improvement in his condition.

The decision of the review court is reversed and remanded with instructions to order remand to the agency for further proceedings not inconsistent with this opinion.

FRIEDLANDER and HOFFMAN, JJ., concur.

---

**5.** The trial court, however, did make such a finding.

**6.** We are not here presented with the issue before this court in *Sullivan v. Day* (1996) Ind.App., 661 N.E.2d 848, *trans. granted*, which would allow an individual to receive benefits even if unaffordable surgery would provide a cure. In that case our Supreme Court has granted transfer thereby vacating our opinion.