**Alesa PACK, Appellant–Petitioner,**

v.

**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellee–Respondent.**

No. 89A05–1004–PL–240.

Court of Appeals of Indiana.

Oct. 25, 2010.

ed by statute. 654 N.E.2d at 19.

Fran Quigley, Adam Mueller, Indiana Legal Services, Inc., Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Alesa Pack ("Pack") applied for Medicaid benefits on the ground that she suf-

fered from medical conditions that substantially impaired her ability to engage in useful work. She was denied benefits by the Family and Social Services Administration's ("FSSA") Medical Review Board ("Review Board") and an Administrative Law Judge ("ALJ"). FSSA affirmed the ALJ and adopted her decision. The trial court affirmed the FSSA's decision.

We reverse and remand for further proceedings.

## Issue

Pack presents two issues for our review, which we restate as:

   I.   Whether the ALJ erred as a matter of law by failing to address specific items of evidence related to Pack's mental health; and

   II.  Whether the ALJ's decision was supported by substantial evidence.

## Facts and Procedural History[1]

In 2002, Pack was diagnosed with panic disorder. In 2004, she was involved in a motor vehicle accident, sustaining multiple fractures to her right tibia as well as cuts and bruises. Pack underwent several surgical treatments for these injuries in 2004 and again in 2005 at OrthoIndy Hospital in Indianapolis ("OrthoIndy") and Reid Hospital in Richmond ("Reid"). In the intervening period, Pack worked for three or four months during 2004 dispensing medication to elderly patients at Lorimar in Richmond, Indiana, before leaving work to seek additional treatment for her injuries. Sometime during 2005, Pack was determined eligible for and began to receive Supplemental Security Income ("SSI"). She continued to seek treatment for injuries related to this car accident through 2007.

Pack was involved in a second collision in 2007. This accident caused a twelve inch scalp laceration, a left orbital blowout fracture, and a thoracolumbar compression fracture. She was hospitalized at Methodist Hospital in Indianapolis ("Methodist") and treated for these injuries.

On February 24, 2008, Pack checked herself into Reid Hospital & Healthcare ("Reid") in Richmond, Indiana, complaining that her medications were "off." (App.77.) She complained of significant back pain and was seen by a spinal surgeon, Ravishankar Vedantam, M.D. ("Dr. Vedantam"), who was unable to identify any reason for Pack's reported physical pain. Dr. Vedantam assessed her gait and physical health and noted that Pack was able to move and walk without pain, despite complaints of "generalized body pain." (App.72.)

Robert Shriro, M.D., ("Dr. Shriro") served as Pack's attending psychiatrist at Reid. Dr. Shriro diagnosed Pack as schizophrenic, noting that she appeared to suffer from auditory hallucinations and exhibited inappropriate behaviors upon admission. Though Pack's demeanor substantially improved during her hospital stay and Pack's relatives had indicated that her occasional misuse of medication caused her psychiatric problems, Dr. Shriro nevertheless continued to believe Pack was schizophrenic.

On February 27, 2008, Pack applied for Medicaid. Her application stated that the diagnoses entitling her to benefits included back pain, broken back, left side facial numbness, hearing loss in her left ear, anxiety, schizophrenia, and panic attacks. Her application for benefits was denied by the Review Team, which determined that though her health issues would last for twelve months or more, they did not "sub-

1. We heard oral argument on this case on September 14, 2010, at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We thank counsel for their able advocacy.

stantially impair her ability to perform labor, services, or to engage in a useful occupation." (App.91.)

Pack appealed the Review Team's determination to an ALJ. At a hearing on February 5, 2009, Pack introduced two pieces of medical evidence in addition to records from her prior hospitalizations that were already available to the ALJ. One item of evidence was a letter from Paul A. Bergfelder, M.D. ("Dr. Bergfelder"), who had treated Pack during 2008. His letter stated, without more detail, that Pack's orthopedic and pain management problems precluded her from working.

The other medical evidence Pack presented was a lengthy report from Adrian V. Villarin, M.D. ("Dr. Villarin"), who had provided Pack psychiatric care since 2004. Dr. Villarin reiterated the diagnosis of panic disorder. He also diagnosed Pack with posttraumatic stress disorder ("PTSD"), benzodiazepine dependency, and opiate dependency. Dr. Villarin noted that Pack complained of sleep disturbance; impaired appetite; depression; feelings of isolation, loneliness, and hurt; daily crying; nightmares; high anxiety; and fear of and sensitivity to high-pitched noises. Though noting her prognosis was good, he also stated that, in his opinion, based on her diagnoses and ongoing treatment needs, Pack was unable to work for at least one year.

On April 30, 2009, the ALJ affirmed the Review Team's determination. The ALJ found that Pack was diagnosed with panic disorder; that she could walk for a block with frequent breaks using a cane; that she had crying spells, nightmares, no friends, and stays home watching television; that she had been receiving one-on-one counseling every three months since 2004; that she did not experience hallucinations or hear voices; and that she could drive and purchase groceries. The ALJ found that Pack's "diagnosis is panic disorder" and that Pack had "some functional limitations related to her physical health." (App.23) The ALJ concluded that those limitations were not significant, however, nor did they "significantly impair her ability to engage in a useful occupation" or "to perform a less strenuous, sedentary-type work." (App.23.) The ALJ concluded that Pack "does not meet the disability requirements for Indiana's Medicaid program." (App.23.) She therefore sustained "the denial of Medical Assistance to the Disabled to Alesa Pack." (App.24.)

Pack sought agency review of the ALJ's decision from FSSA. On May 27, 2009, FSSA issued its Notice of Final Agency Action and affirmed the ALJ's decision. Having extinguished her administrative remedies, Pack timely sought judicial review from the Wayne County Circuit Court, filing her Verified Petition for Judicial Review on June 15, 2009. On April 6, 2010, after submission of briefs and oral argument, the trial court ruled against Pack.

This appeal followed.[2]

### Discussion and Decision

*Proper Findings and Conclusions*

Before we address the ALJ's decision in this case directly we take time here to address the purposes, functions, and proper form of findings of fact and conclusions of law in an administrative context. We do so because thousands of administrative

---

2. On August 20, 2010, during the pendency of this appeal, Pack notified this court through counsel that she had obtained Medicaid benefits. This appeal is not moot, however, because the application for benefits at issue in this case covers medical costs from a two-year period during which Pack's newly awarded Medicaid benefits do not provide coverage.

orders issue each year from our state agencies. Yet we are at times confronted with orders that are defective because the agency's decision lacks support in the record, that do not adequately articulate a basis for the agency's decision, that recite the contents of evidence presented to an agency without making proper findings of basic fact, or that simply fail to adequately or rationally apply law to found facts. Failing to follow proper procedures and form for agency orders may reflect an underlying failure to observe due process of law, whether or not due process was actually had by any or all affected parties and whether or not the agency's ultimate decision is correct.

Medicaid determinations are reviewed under the Administrative Orders and Procedures Act ("AOPA"). Ind.Code § 12–15–28–2. Under AOPA, a final order by an administrative agency must present written findings of fact, including "findings of ultimate fact ... accompanied by a concise statement of the underlying basic facts of record to support the findings" as well as "conclusions of law for all aspects of the order." I.C. § 4–21.5–3–27(b) & (c).

Our supreme court observed that the written findings and conclusions required of an agency's final order serve a variety of purposes, all critical to the proper determination of a claim. These include "facilitating judicial review, avoiding judicial usurpation or administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 31 (Ind.1981) (quoting 2 Kenneth Davis, *Administrative Law Treatise* § 16.05 (1958)).

In *Perez*, a case centering on a worker's compensation decision, the court observed that

> both claimant and employer have a legal right to know the evidentiary bases upon which the ultimate finding rests.... That responsibility initially lies with the administrative agency, who for that reason must enter specific findings of basic fact to support its finding of ultimate fact and conclusion of law.... [T]he integrity of that decision will be maintained by judicial review which is limited to these findings.

*Id.* at 32 (citations omitted).

Put another way, the statutory requirement of written specific findings of basic facts, conclusions of law, and ultimate findings of fact helps to preserve the due process rights of those affected by the actions of administrative agencies. Thus the form and content of written findings and conclusions are of great importance: our legislature enacted the requirements for written findings and conclusions to assure that individuals are afforded due process, thereby "protect[ing] against careless or arbitrary administrative action." *Id.* In that sense, properly composed written findings and conclusions assure due process because it is difficult, if not impossible, to produce such a document without having afforded all parties due process of law.

Interpreting AOPA, the Indiana Administrative Code requires that an agency's order include findings of basic facts, specify the reasons for the decision, and identify the evidence and applicable statutes, regulations, rules and policies that support the decision. *See* Ind. Admin. Code tit. 405 r. 1.1–1–6(b). The specific findings of basic facts must be supported by "substantial evidence." I.C. § 4–21.5–5–14(d)(5); *also Ind. Family & Soc. Svcs. Admin. v. Pickett,* 903 N.E.2d 171, 177 (Ind.Ct.App. 2009) (citations omitted), *aff'd and clarified on reh'g,* 908 N.E.2d 1191 (Ind.Ct. App.2009). The findings of fact need not

recite every piece of evidence admitted at the hearing, but they must contain the basic facts that formed the basis for the ultimate decision. 405 IAC 1.1–1–6(c).

This court and our supreme court have set forth criteria to determine whether findings and conclusions conform to the requirements of AOPA and the Administrative Code. "A finding of fact must indicate, not what someone said is true, but *what is determined to be true,* for that is the trier of fact's duty." *Moore v. Ind. Family and Soc. Svcs. Admin.,* 682 N.E.2d 545, 547 (Ind.Ct.App.1997) (emphasis added). "[F]indings which indicate that the testimony or evidence was this or the other are not findings of fact." *Id.* (citing *Perez,* 426 N.E.2d at 33; *Hehr v. Review Bd. of Ind. Emp. Sec. Div.,* 534 N.E.2d 1122, 1127 n. 4 (Ind.Ct.App.1989)). Thus, a finding "that 'Mr. Jones testified so and so'" is "not [a finding] of basic fact in the spirit of the requirement." *Perez,* 426 N.E.2d at 33. "Statements of that nature lend perspective to our task, but in no way indicate what the Board found after examining all the evidence. The inclusion of statements of that nature is not harmful error, but rather mere surplusage." *Id.* While finding that an individual testified to a particular thing or a document stated a certain thing is not a finding of basic fact, the agency may provide such findings and then arrive at a conclusion as to which pieces of evidence are persuasive and constitute the facts upon which the decision is based.

Whichever approach the agency takes, it must always actually reach and state findings of basic fact and not merely recite that certain evidence exists or was proffered. The ALJ must assess the evidence presented, determine what the facts are, and state those as findings of basic fact. These basic findings in turn must form the basis for the agency's order. "[T]he spe-

cific findings of basic fact must reveal the [agency's] determination of the various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the [agency]." *Perez,* 426 N.E.2d at 33. The findings must be

> a simple, straightforward statement of what happened ... stated in sufficient relevant detail to make it mentally graphic.... And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue ... so that the court may determine whether [the agency] has resolved those issues in conformity with the law.

*Id.* (quoting *Whispering Pines Home for Senior Citizens v. Nicalek,* 333 N.E.2d 324, 326 (Ind.Ct.App.1975)).

Case law also provides guidance on whether the conclusions of an administrative agency are proper. The agency's decision must show a "rational connection between the basic facts ... and the ALJ's ultimate decision." 405 IAC 1.1–1–6(c). The decision must also "cite the relevant laws ... and relate the facts to the law." *Id.* Thus an agency's decision must demonstrate a logical connection among the findings of basic fact, the law applied, and the inferences made therefrom in arriving at an ultimate finding. *NIPSCO v. U.S. Steel Corp.,* 907 N.E.2d 1012, 1017 (Ind. 2009) (holding that appellate courts may review agency orders for "the logic of inferences drawn and any rule of law that may drive the result"). Where the findings of ultimate fact reached by the agency are irrational in light of the relationship between the facts and the law, those findings are defective and must be reversed upon review. *See, e.g., Moore,* 682 N.E.2d at 548 (noting that an ALJ's determination that Moore could stay awake in school "if he is interested in something" did not

mean that Moore did not suffer a substantial impairment in his ability to work). Where an agency's actions (and in turn its written order) do not conform to "the statutory standards and legal principles involved in producing its decision, ruling, or order," the action (and order) are defective and must be reversed. *NIPSCO,* 907 N.E.2d at 1016.

Compliance with this guidance is critical. Where an agency's ultimate findings of fact have proper support in the findings of basic fact and conclusions, which are themselves properly stated, rationally based on substantial evidence, and take due regard for the totality of the evidence presented, the affected party can be sure the agency has afforded it due process. The agency itself benefits from proper determination and drafting of its findings and conclusions because it is more likely to arrive at a correct decision. Properly drafted orders lead to prompt judicial review, fewer reversals and remands, more efficiency, and better use of the resources afforded to the government by the public.

### The Medicaid Standard

Pack's application for Medicaid benefits was evaluated under Indiana law and regulations governing eligibility for assistance for the disabled. Though Pack receives SSI, this is not dispositive of her eligibility for Medicaid benefits. In 1974, in the wake of legislative changes that potentially greatly expanded the number of individuals eligible for Medicaid, Congress permitted states to provide Medicaid under requirements no stricter than the 1972 eligibility requirements, nor more liberal than the SSI requirements. *Humphreys v. Day,* 735 N.E.2d 837, 841–42 (Ind.Ct.App. 2000) (citing 42 U.S.C. § 1396a(f)), *trans. denied.* Indiana elected to continue its participation in Medicaid under this option. I.C. § 12–15–2–6.

Thus, applications for Medicaid assistance for the disabled are reviewed by FSSA under Indiana Code Section 12–14–15–1. That section provides that an applicant who has a pending application for or is actively receiving SSI benefits shall receive Medicaid assistance if he or she has:

(A) A physical or mental impairment, disease, or loss that is verifiable by a physician licensed under IC 25–22.5, that appears reasonably certain to result in death or to last for a continuous period of at least twelve (12) months without significant improvement, and that substantially impairs the individual's ability to perform labor or services or to engage in a useful occupation.

(B) A mental impairment, disease, or loss that is:

(i) diagnosed by a physician licensed under IC 25–22.5 or a health services provider in psychology licensed under IC 25–33–1; and

(ii) verifiable by a physician licensed under IC 25–22.5 or a psychologist licensed under IC 25–33;

that appears reasonably certain to last for a continuous period of at least twelve (12) months without significant improvement, and that substantially impairs the individual's ability to perform labor or services or to engage in a useful occupation. Employment in a sheltered workshop or under an approved vocational rehabilitation plan is not considered a useful occupation for the purposes of this chapter. The determination of medical disability under this subdivision shall be made without reference to the individual's ability to pay for treatment.

I.C. § 12–14–15–1(2).

The ALJ affirmed the Review Team's decision that Pack was not eligible for Medicaid under Section 12–14–15–1 be-

cause, though Pack had a medical condition that would continue for twelve months or longer, the ALJ determined that Pack's conditions did not substantially impair her ability to engage in useful work.

The Review Team and the ALJ applied the Indiana Administrative Code in making this determination. *See* 405 IAC 2–2–3. Pack does not challenge the ALJ's determinations on the age, work experience, and education factors in Rule 2–2–3. Rather, Pack directs her challenge at the ALJ's findings and conclusions related to her functional limitations. The regulations provide the following factors for determining whether functional limitations substantially impair an individual's ability to engage in useful work:

(A) The applicant's functional limitations, as follows:

  (i) Consideration is given to the applicant's significant physical functions and capacity that affect vocational capacity, such as standing, walking, lifting, range of motion, strength, agility, and stamina.

  (ii) Consideration is given to the individual's intellectual and sensory functions that affect vocational capacity, such as sight, speech, hearing, reasoning, and following directions.

  (iii) Consideration is given to the applicant's capacity for sustained activity on a regular basis.

405 IAC 2–2–3(a)(2).

### Standard of Review

Having addressed the due process-related requirements of an agency order and the substantive legal requirements for Medicaid decisions, we turn now to the applicable standard of review.

As noted above, orders denying Medicaid coverage are reviewed under AOPA.

Under AOPA, once an agency has issued a final order or a petitioner has "exhaust[ed] all administrative remedies available within the agency" the petitioner may seek judicial review. I.C. § 4–21.5–5–4(a). Judicial review is conducted first in a trial court of proper jurisdiction. I.C. § 4–21.5–5–6. Once a trial court has rendered a decision on the final order, that decision may be appealed "in accordance with the rules governing civil appeals from the courts." I.C. § 4–21.5–5–16.

When challenging the validity of an agency's action upon a petition for judicial review, the challenger bears the burden of proof. I.C. § 4–21.5–5–14(a). We may grant relief to the challenger only if the agency's action is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

I.C. § 4–21.5–5–14(d).

When we review an administrative agency's order, we stand in the shoes of the trial court. *Pickett,* 903 N.E.2d at 175 (citations omitted). Thus, we may not consider any evidence not already in the administrative record, retry the case, or substitute our judgment for the agency's judgment. I.C. § 4–21.5–5–11.

Similarly, we cannot reweigh the evidence or judge the credibility of witnesses. *Pickett,* 903 N.E.2d at 175. We look instead to whether the findings are supported by substantial evidence. We analyze the record as a whole, *Natural Resources Comm'n of State of Ind. v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind.

1994), looking for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Partlow v. Ind. Family & Soc. Svcs. Admin.*, 717 N.E.2d 1212, 1217 (Ind.Ct.App.1999). "Substantial evidence is more than a scintilla, but something less than a preponderance of the evidence," *State v. Carmel Healthcare Mgmt., Inc.*, 660 N.E.2d 1379, 1384 (Ind.Ct.App.1996), *trans. denied.* Where substantial evidence is lacking, we may vacate the agency's decision and remand. *Pickett*, 903 N.E.2d at 175; I.C. § 4–21.5–5–15. Where there is a "reasonably sound basis of evidentiary support" upon review of the record with no other defect, we may uphold the agency's findings of fact. *Yater v. Hancock County Bd. of Health*, 677 N.E.2d 526, 529 (Ind.Ct. App.1997) (citations omitted).

### The ALJ's Findings and Conclusions

We turn now to the ALJ's findings and conclusion in Pack's appeal. Pack advances two arguments: that the ALJ erred by failing to give proper consideration to the evidence provided by Dr. Bergfelder and Dr. Villarin, and that the ALJ's decision was not supported by substantial evidence. While we agree with Pack that the ALJ erred in her decision, we find error on slightly different grounds, namely, that the ALJ's decision is defective for failing to consider the totality of the evidence provided, and is defective as well in its presentation of and engagement with the findings of basic fact when applying the law to reach a finding of ultimate fact that Pack's health conditions did not substantially impair her ability to work.

Just as engagement with the evidence presented is crucial for due process, so too is the presentation of administrative findings that demonstrate such engagement. *See Perez*, 426 N.E.2d at 32–32. It is not necessary that an ALJ's findings address every piece of evidence, so long as the findings and conclusions are supported by

the evidence when that evidence is viewed *in toto.* *See* 405 IAC 1.1–1–6(c); *AMAX Coal*, 638 N.E.2d at 423.

In examining the ALJ's findings and conclusions, we note that there is a significant difference between the ALJ's treatment of Pack's physical conditions when compared to her psychiatric conditions. This difference does not reflect the evidence for each in the record, however.

■ We find no error in the ALJ's treatment of Pack's physical condition. The ALJ's decision found that Pack had sustained physical injuries in multiple car accidents and noted that Pack complained of difficulty walking and squatting. Based on evidence from physician observations in the record, however, the ALJ found basic facts contrary to Pack's assertions and concluded through a proper application of the regulations that Pack was not substantially impaired from walking or other physical activities involved with light office work. Pack points us to the ALJ's failure to address Dr. Bergfelder's letter that stated Pack suffered from physical ailments that prevented her from working. But given the scant evidence in Dr. Bergfelder's letter when compared to the more detailed records from Pack's 2008 hospitalization, we find no defect in the ALJ's decision as it pertains to Pack's physical condition.

■ The ALJ's consideration of Pack's psychiatric conditions is quite a different situation. The ALJ found that Pack's "diagnosis is panic disorder"; she does not experience hallucinations; she "has crying spells, stays at home a lot watching television, has no friends and has nightmares"; she receives counseling once every three months; she has not had thoughts of or made attempts at suicide; and she has never been hospitalized for mental health reasons. (App.21.) These findings are supported by substantial evidence and so are not erroneous, but they are also the

extent of the ALJ's engagement with Pack's psychiatric conditions. While the ALJ applies the functional limitation factors set forth in the State's Medicaid regulations to Pack's physical conditions, *see* 405 IAC 2–2–3(a)(2)(A), the ALJ's decision did not apply these factors to her panic disorder diagnosis and its attendant effects, let alone the other diagnoses in the record. The decision instead notes the panic disorder diagnosis but applies the law only to Pack's physical complaints. Thus we cannot say that the ALJ has fulfilled the requirement that she determine the "various ... factual disputes" and reached conclusions associated with the claim. *Perez,* 426 N.E.2d at 33.

Moreover, the ALJ's use of the record on Pack's psychiatric condition is selective. The ALJ's findings related to Pack's panic disorder and lack of hallucinations come in part from Dr. Villarin's report. Yet the ALJ's decision does not reflect any engagement with sections of Dr. Villarin's report that diagnose Pack with PTSD and two different forms of drug dependencies. The decision also appears to disregard large portions of the records from Pack's 2008 hospital records that indicate a diagnosis of schizophrenia rather than panic disorder—though the ALJ directly engaged those same records when addressing Pack's claimed physical disabilities. To the extent that the schizophrenia diagnosis might conflict with the panic disorder, PTSD, and substance dependency diagnoses advanced by Dr. Villarin, the ALJ's findings reflect no "determination ... regarding the various specific issues of fact which bear on the particular claim" or resolution of "the various relevant subissues and factual disputes" which might dispose of Pack's claim as it pertains to Pack's psychiatric health. *Perez,* 426 N.E.2d at 33.

We are mindful here of our duty not to reweigh evidence, a function properly assigned to the ALJ. *See Pickett,* 903 N.E.2d at 175. Yet the ALJ's findings here leave us without confidence that she weighed Packs' psychiatric evidence or applied relevant law to that evidence in reaching a decision. The ALJ's observation that Pack's "diagnosis is panic disorder," made once in the findings of basic fact and once in the conclusions of law, is not clearly a finding of fact that Pack actually suffers from panic disorder. (App.20, 23.) The statement may be a hedge against finding that Pack actually suffers from panic disorder, or may be a defective finding akin to "Mr. Jones testified so and so." *Perez,* 426 N.E.2d at 33. Moreover, the ALJ did not make any findings on whether Pack's diagnosis and the apparently attendant issues of sleeplessness, isolation, and crying spells constituted any form of occupational impairment. Indeed, we note that the ALJ concluded that Pack "has some functional limitations related to *physical health* " without making any determination as to her mental health. (App. 23; emphasis added.)

Thus we cannot, in context, determine whether the ALJ intended these individual findings to constitute findings that Pack actually suffered from panic disorder but that the disorder did not substantially impair her ability to work, or whether the ALJ intended to express a determination that Dr. Villarin's assessment of Pack's mental health was not credible. Of the numerous psychiatric conditions discussed in the record, the ALJ's decision only addresses one of them, does so in a "finding" that is not a proper finding of basic facts, reiterates the defective finding as a conclusion of law, and then does not apply the applicable legal standard in assessing whether that condition and its attendant problems substantially impair Pack from working.

In light of the foregoing discussion, we remand this matter to the ALJ. We do so

not because the ALJ's decision is unsupported by substantial evidence, but because the ALJ's decision is sufficiently defective in its findings of fact as to make this matter largely unreviewable by this court on the question of substantial evidence. Under the circumstances we, not the ALJ, would be forced to weigh evidence, and this we cannot do. *Pickett*, 903 N.E.2d at 175. We therefore hold that the ALJ's decision is counter to Indiana Code Section 4–21.5–5–14(d)(4) in that it was issued "without observance of procedure required by law," namely that the decision fails to reach findings of basic fact, which in turn makes any legal conclusions or findings of ultimate fact defective.

We reiterate that the ALJ is not required upon remand to address every piece of evidence, so long as the new findings demonstrate engagement with the whole of the record, make findings of basic fact on Pack's various claimed conditions, and then make ultimate findings based on those basic facts and the applicable law. *See* 405 IAC 1.1–1–6(c). It may be that, in making findings based on the evidence, the ALJ will determine that Pack suffers from one or another condition and not others. The ALJ may well reach a different set of findings of basic fact with the same general result. We nevertheless anticipate that, upon remand, the ALJ will craft findings of fact that make clear what psychiatric conditions did or did not affect Pack, and will then take due regard for those basic findings in applying the law and reaching ultimate findings in this case on how Pack's psychiatric conditions did or did not substantially impair her ability to work.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.