# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Daniel A. Dixon
Lawrence County Public Defender
Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF CHILD
SERVICES

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE COURT
APPOINTED SPECIAL ADVOCATE

Darlene Steele McSoley
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of D.S. (Minor Child), and <br><br> B.T. (Mother), <br><br> *Appellant-Respondent,* <br><br> v. | May 28, 2015 <br><br> Court of Appeals Case No. 47A01-1405-JT-230 <br><br> Appeal from the Lawrence Circuit Court <br><br> The Honorable Andrea K. McCord, Judge <br><br> The Honorable James F. Gallagher, Referee <br><br> Case No. 47C01-1306-JT-224 |

The Indiana Department of Child
Services,

*Appellee-Petitioner,*

and

Court Appointed Special
Advocate,

*Co-Appellee.*

**Crone, Judge.**

# Case Summary

[1] B.T. ("Mother") appeals the trial court's decree ("the Decree") terminating her parental rights to D.S. ("Child").[1] She argues that the trial court clearly erred in concluding that termination of the parent-child relationship is in Child's best interests and that there is a satisfactory plan for Child's care and treatment. Finding no error, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the Decree follow. On March 10, 2010, Mother gave birth to Child. In October 2010, the Department of Child Services ("DCS") removed Child from Mother's custody.[2] In April 2011, the trial court

---

[1] D.S.'s father consented to his adoption. Appellant's App. at 58.

[2] In their briefs, both parties state that Child was removed from Mother's care in October. However, the trial court found that Child was removed from Mother's custody in May 2011, which is the month immediately following Child's adjudication as a CHINS.

adjudicated Child a child in need of services ("CHINS") based on its determination that Mother had not consistently visited with Child, had used drugs, and was arrested in February 2011 for possession of a controlled substance. The trial court ordered Mother and A.S. ("Father") to participate in paternity testing. Father's paternity was established. In November 2011, the trial court awarded Father primary physical custody of Child. The trial court then dismissed the CHINS case.

[3]     In March 2012, DCS removed Child from Father's home and filed a second CHINS petition based on allegations that Father was manufacturing methamphetamine in Child's home.[3] DCS placed Child with his paternal grandparents, where Child remains. In October 2012, the trial court declared Child a CHINS based on its determination that Father endangered Child by manufacturing methamphetamine in Child's home.

[4]     In June 2013, DCS filed a termination petition. On February 27 and 28, 2014, the trial court held an evidentiary hearing on the petition, at which Mother, the DCS case manager, D.S.'s court appointed special advocate ("CASA"), D.S.'s paternal grandmother, and the director of the organization that conducted Mother's visitation testified. Mother, DCS, and Child's CASA each filed proposed findings of fact and conclusions thereon. In April 2014, the trial court entered its Decree terminating Mother's parental rights, essentially adopting the

---

[3] The trial court found that Child was removed from Father's custody in October 2012, which corresponds to the CHINS adjudication.

CASA's proposed findings and conclusions. The Decree provides in relevant part as follows:

> 6. Throughout both CHINS proceedings, Mother has continued to have problems with substance abuse, homelessness and periods of incarceration.
>
> 7. Even when she was not incarcerated, Mother did not cooperate with service providers. ….
>
> ….
>
> 10. On October 11, 2012, Mother was arrested for possession of narcotics, prescription fraud and theft. At the time of the termination hearing, Mother was still incarcerated in Women's Prison. Her earliest release date is July, 2014.
>
> 11. Although Mother had signed up for GED training and parenting classes while in prison, she was removed from the eligibility list for those classes due to her misbehavior before the classes began.
>
> ….
>
> CLEAR AND CONVINCING EVIDENCE SUPPORTS THE FOLLOWING SPECIFIC FINDINGS WHICH THE COURT NOW MAKES:
>
> A. [Child] was removed from Mother's custody in May of 2011 and from Father's custody in October of 2012. Since that later date, [Child] has been living in foster care and under the supervision of the DCS. [Child] has been removed from the parents' custody and control by the DCS for more than 15 of the last 22 months.
>
> B. The parents' pattern of substance abuse, homelessness, criminal behavior and long periods of incarceration shows that there has been little improvement during the last 16 months. There is a strong probability that the conditions which resulted in [Child's] placement outside the home will not be remedied.
>
> C. Neither parent is able to care for [Child], and keeping [Child] in foster care for a prolonged period could damage his need for permanency. Termination is in [Child's] best interest.
>
> D. [Child's] present foster family is a pre-adoptive family. [Child] has bonded with his pre-adoptive parents and seems to be thriving in his

present situation. DCS's plan to let [Child] be adopted is a satisfactory plan for the care and treatment of the child.

Appellant's App. at 58-60. Mother appeals.

# Discussion and Decision

## Standard of Review

Mother appeals the termination of her parental rights.

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. …. We recognize, however, that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009) (citations, quotation marks, and brackets omitted).

If the court finds that the allegations in a petition to terminate parental rights as described in Indiana Code Section 31-35-2-4 are true, "the court shall terminate the parent-child relationship." Ind. Code § 31-35-2-8. Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a CHINS must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

The State must prove by "clear and convincing evidence" each and every element set forth in Section 31-35-2-4(b)(2). *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. "'Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very

survival.'" *G.Y.*, 904 N.E.2d at 1261 (quoting *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005)). "'Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody.'" *Id.* (quoting *Bester*, 839 N.E.2d at 148).

[8] Although a trial court is not statutorily required to enter findings of fact and conclusions thereon when terminating parental rights, this Court has held that given the constitutional dimension of such a decision, trial courts must "enter findings of fact that support the entry of the conclusions called for by Indiana statute and the common law." *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed*.

> When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. We consider only the evidence and reasonable inferences that are most favorable to the judgment. …. When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. We will set aside the [trial] court's judgment only if it is clearly erroneous. A judgment is clearly erroneous if the findings do not support the [trial] court's conclusions or the conclusions do not support the judgment.

*G.Y.*, 904 N.E.2d at 1260 (citations and quotation marks omitted).

[9] Here, many of the trial court's findings are merely recitations of witness testimony and opinions. On multiple occasions, we have stated that "'[f]indings which indicate that the testimony or evidence was this or the other

are *not* findings of fact.'" *Parks v. Delaware Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind. Ct. App. 2007) (quoting *Moore v. Ind. Family & Social Servs. Admin.*, 682 N.E.2d 545, 547 (Ind. Ct. App. 1997)) (emphasis in *Parks*). Such improper findings are not "'harmful error'" but are considered "'mere surplusage.'" *Id.* (quoting *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 33 (Ind. 1981)). Thus, in reviewing the Decree, we ignore the improper findings.

## Section 1 - Termination of Mother's parental rights is in Child's best interests.

[10]    Mother challenges the trial court's conclusion that termination of the parent-child relationship is in Child's best interests.

> [I]n determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the Department of Child Services and to consider the totality of the evidence. In so doing, the trial court must subordinate the interests of the parent to those of the child. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Moreover, we have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009) (citations omitted); *see also In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999) ("[C]hildren should not be compelled to suffer emotional injury, psychological adjustments, and instability to preserve parental rights.").

Specifically, Mother argues that the trial court clearly erred in concluding that keeping Child in foster care for a prolonged period could damage his need for permanency. She argues that there is no evidence that maintaining Child's current placement with his paternal grandparents would harm his need for permanency. She states that she was expected to be released from prison only four to five months after the termination hearing and that her ability to establish an appropriate life upon release could be determined relatively quickly.

Mother likens her case to *G.Y.*, 904 N.E.2d 1257, in which our supreme court reversed the termination order of a mother who was incarcerated at the time of termination. *G.Y.* is clearly distinguishable. There, the mother was incarcerated twenty months after the child's birth for a crime that she committed before the child was even conceived. The supreme court noted that there was no evidence that the mother was anything but a fit parent for the first twenty months of the child's life, no evidence that she had engaged in a pattern of criminal activity that was likely to continue upon her release from prison, and, significantly, she had taken all the steps she could while incarcerated to better herself. *Id*. at 1265. Here, in contrast, the trial court found that throughout both CHINS proceedings Mother continued to have problems with substance abuse, homelessness, and periods of incarceration, did not cooperate with service providers when she was not incarcerated, was arrested for possession of narcotics, prescription fraud, and theft, and became ineligible for GED training and parenting classes due to her misbehavior. Appellant's App. at 58-60. Mother does not challenge these findings.

Mother also relies on *In re J.M.*, 908 N.E.2d 191 (Ind. 2009), in which our supreme court upheld the trial court's *denial* of the State's petition to terminate the mother's and father's parental rights. In so doing, our supreme court concluded that the evidence in the record supported the trial court's conclusion that the parents' ability to establish a stable and appropriate life upon release could be determined within a relatively quick period of time and the child's need of permanency would not be severely prejudiced. *Id.* at 195-96. Mother's reliance on *J.M.* is unavailing. In addition to the fact that the procedural posture of *J.M.* is different from this case, the facts are also clearly distinguishable. In *J.M.*, the parents had fully cooperated with the services required of them while incarcerated. Mother has not. Mother's behavior throughout the two CHINS cases supports the trial court's conclusion that continued foster care will harm Child's need for permanency. Accordingly, we cannot say that the trial court clearly erred in concluding that termination of Mother's parental rights is in D.S.'s best interests.

## Section 2 – There is a satisfactory plan for Child's care and treatment.

The trial court concluded that Child had bonded with his pre-adoptive parents and was thriving in their custody. Mother does not challenge this conclusion. However, she argues that under the facts of this case, adoption by Child's paternal grandparents is not a suitable plan for Child's care and treatment because the grandmother knew about Mother's addiction and had delivered drugs to Mother in the summer of 2012 and both grandparents used pain

medication and Xanax on a daily basis, which could impair their ability to transport and supervise Child. Mother's argument is merely a request to reweigh the evidence, which we must decline. We conclude that the trial court did not clearly err in concluding that there is a satisfactory plan for Child's care and treatment. Therefore, we affirm the termination of Mother's parental rights to D.S.

Affirmed.

Brown, J., and Pyle, J., concur.