


FILED

Jan 07 2026, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

In the Matter of G.V. and A.V., Children in Need of Services, and M.V., (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services, et al.

*Appellee-Petitioner*

---

January 7, 2026

Court of Appeals Case No.
25A-JC-1223

Appeal from the Marion Superior Court

The Honorable Geoffrey A. Gaither, Judge

Trial Court Cause No.
49D09-2501-JC-331
49D09-2501-JC-333

---

**Opinion by Judge DeBoer**

Judges Bradford and Weissmann concur.

**DeBoer, Judge.**

## Case Summary

M.V. (Mother) appeals the trial court's determination that her daughter, G.V. (Child), is a Child in Need of Services (CHINS). She presents multiple arguments on appeal, but we find one to be dispositive: whether remand is necessary because most of the court's findings are improper and the remaining findings do not support the CHINS determination. Answering that question in the affirmative, we remand to the trial court for proper findings of fact and conclusions of law.

## Facts and Procedural History

Mother has four children, two of whom are the subjects of the underlying CHINS proceedings. A.V., who was born on May 15, 2015, is the daughter of Mother and M.M. (Father M). G.V., who was born on January 2, 2024, is the daughter of Mother and A.J. (Father J). Mother had legal and physical custody of G.V. and unsupervised visits with A.V.[1]

---

[1] Father M had primary custody of A.V. for approximately a year and a half leading up to the proceedings.

[3] In January 2025, the Indiana Department of Child Services (DCS) received a report that Mother was physically abusing A.V. The report involved an incident that occurred while A.V. was staying with Mother over her 2024 Christmas break. A.V. told DCS that Mother took her into the bathroom, yelled and cussed at her, held her down, pulled her hair, and hit her with a slipper. A.V. had a scratch on her forehead and reported having another on her back. At the insistence of DCS, Father M took A.V. to the hospital two days later to be examined. The examination revealed bruising and scratches on A.V.'s arm and leg, a faint bruise on her right cheek, and a scratch on her forehead. She also had an injury to her foot that she said was not caused by Mother.

[4] A.V. also told DCS that she "saw [Mother] smack [G.V.] on the leg" and that "[i]t was loud and left a red mark." Appellant's Appendix Vol. 2 at 31. When a DCS family case manager (FCM) visited Mother's home to follow up on these reports, she observed a goose egg on G.V.'s head. Mother said that A.V. and G.V. had been playing and G.V. fell and hit her head. At the FCM's instruction, Mother took G.V. to Riley Children's Hospital for a pediatric evaluation. G.V.'s skeletal and head scans were normal, she was not admitted to the hospital, there was no follow-up requested, and there were no recommendations made for ongoing medical care.

[5] That same day, while Mother was still at the hospital with G.V., a different FCM came and removed G.V. from Mother's care without a court order under instructions from "upper management that [those were] the processes [they]

were following that day." Transcript at 71. While the FCM did not notice any marks or bruises on G.V. at the hospital, she was concerned by Mother's behavior during the removal, describing her as "very frantic[.]" *Id.* at 68. A few days later, DCS filed requests to take custody of G.V. and A.V. and to file CHINS petitions. The court granted those requests and DCS filed its CHINS petition, alleging that both A.V. and G.V. were CHINS under Indiana Code sections 31-34-1-1 and 31-34-1-2(a). Both girls were placed in Father M's care.

[6]     Before the fact-finding hearing, Mother participated in supervised visitation with the girls. The first visit supervisor ended the visits after only three sessions because she was concerned about Mother and A.V.'s relationship, but she did not have any safety concerns related to G.V. She recommended therapeutic visitation, but instead, Mother was referred to a second supervisor for general supervised visitation. The second supervisor completed two visits with Mother and the girls, one of which took place at the Children's Museum. At the beginning of the visit, the supervisor found it strange that Mother changed G.V.'s diaper on the floor of the lobby given the heavy foot traffic in that area, but she did not intervene. She was also concerned that Mother let G.V. play in the water exhibit given how cold outside it was that day, but Mother had a change of clothes for G.V. When G.V. later soiled her second outfit, Mother changed her into a third outfit that was sleeveless; however, G.V. had winter pants and a coat to wear. The next day, Mother had her second visit and carried G.V. and wouldn't put her down. This frustrated G.V., who wanted to

be put down. The second supervisor observed G.V. acting happier after being let down to play with A.V. while A.V. and Mother argued the rest of the visit.

[7] In March, the trial court held a fact-finding hearing on the CHINS petitions. Mother, Fathers M and J, three DCS FCMs, the two visit supervisors, and a friend of Mother testified to the facts above. After DCS rested its case, Mother moved to dismiss the petition as to G.V., arguing that "DCS ha[d] not met its burden" and that "there [was] no correlation between the bruise on [G.V.'s] head and any act or inaction [Mother] herself did." Tr. at 118. The court denied the motion and, after hearing closing arguments, found both A.V. and G.V. were CHINS. Mother then requested that G.V. be returned to her care on a trial home visit (THV), which the court denied. The court later entered its fact-finding order with findings of fact and conclusions of law.

[8] In April, after the dispositional hearing, the trial court entered its order which continued the girls' placements with Father M. In addition to the standard requirements[2] under a dispositional order, Mother was required to complete a psychological evaluation and family functional assessment and participate in

---

[2] The standard requirements include staying in contact and cooperating with DCS and service providers, enrolling in recommended services, maintaining suitable housing, and caring and providing a safe environment for the children.

therapy.[3] Mother renewed her request for a THV with G.V. which the court again denied. Mother only appeals G.V.'s CHINS determination.

## Discussion and Decision

[9] Mother contends that the trial court's findings of fact are clearly erroneous because they fail to support its judgment. Specifically, she claims that an overwhelming majority of the findings "merely recite what witnesses 'testified,' 'stated,' 'reported[,]' or 'believed' or recite general trial proceedings instead of [] factual determinations." Appellant's Brief at 17. We agree.

[10] DCS's CHINS petition for G.V. alleged G.V. was a CHINS under two statutes: Indiana Code sections 31-34-1-1 (neglect) and 31-34-1-2 (abuse).[4] DCS had to prove its allegations by a preponderance of the evidence. Ind. Code § 31-34-12-3. Pursuant to the neglect statute, DCS must prove that:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent[] . . . to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:

---

[3] There is an open paternity case between Mother and Father M related to A.V., and at the dispositional hearing, the parties discussed the parenting time schedule at length. However, those issues are not relevant to this appeal.

[4] DCS also alleged that the presumption under Indiana Code section 31-34-12-4 (injury presumption) applied in this case, but the trial court made no reference to that presumption in its findings or conclusions. Thus, we do not address that presumption on appeal.

(A) when the parent[] . . . is financially able to do so; or

(B) due to the failure, refusal, or inability of the parent[] . . . to seek financial or other reasonable means to do so; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-1.  Under the abuse statute, DCS must prove by a preponderance of the evidence that:

(1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent[] . . .; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

I.C. § 31-34-1-2(a).[5]

_____

[5] Effective July 1, 2025, Indiana Code section 31-34-1-2(a)(1) was amended to read that an "act or omission of the child's parent, guardian, or custodian[] includ[es] failure . . . to protect the child from exposure to the

[11] Where, as here, a trial court has entered findings of fact and conclusions of law sua sponte, we apply a two-tiered standard of review. *In re K.W.*, 178 N.E.3d 1199, 1210 (Ind. Ct. App. 2021). We determine "whether the evidence supports the findings and whether those findings support the judgment." *In re E.K.*, 260 N.E.3d 901, 909 (Ind. 2025). We will only set aside a finding if it is clearly erroneous. *Parks v. Delaware Cnty. Dep't of Child Servs.*, 862 N.E.2d 1275, 1279 (Ind. Ct. App. 2007); Ind. Trial Rule 52(A). "[W]e note that '[s]ua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings.'" *Parks*, 862 N.E.2d at 1278 (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)); *see also* T.R. 52(D).

[12] Upon reviewing the record and the trial court's order, we find the approach taken in *Parks v. Delaware County Department of Child Services* to be particularly instructive. 862 N.E.2d 1275 (Ind. Ct. App. 2007).[6]

[13] Here, as was true in *Parks*, the trial court's fact-finding order was merely a signed copy of the proposed findings and conclusions submitted by DCS. "[W]hen a trial court accepts verbatim a party's proposed findings of fact and

---

use, possession, sale, or manufacture of illegal drugs[.]" However, the amendment took effect after the proceedings in this case and was neither relevant to this appeal nor did it impact our analysis.

[6] We note that at the time *Parks* was decided, trial courts were not required to enter findings of fact and conclusions of law in termination of parental rights cases. 862 N.E.2d at 1277; *see* I.C. § 31-35-2-8 (2007). However, in July 2012, our Legislature amended this statute to require trial courts to enter such findings and conclusions to support its determination. *See* I.C. § 31-35-2-8 (2025). As such, certain statements in *Parks* have now been superseded by statute, but that change does not impact our reliance on the court's legal reasoning in the case at bar.

conclusions thereon, that practice 'weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court.'" *Staff Source, LLC v. Wallace*, 143 N.E.3d 996, 1009 (Ind. Ct. App. 2020) (quoting *Cnty. of Lake v. Pahl*, 28 N.E.3d 1092, 1100 (Ind. Ct. App. 2015), *reh'g denied, trans. denied*).  While "[i]t is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party[,]" *id.*, we "discourage this practice where . . . many of the findings submitted by a party are not proper findings." *Parks*, 862 N.E.2d at 1278.

[14]  Moreover, as Mother contends, most of the trial court's findings of fact simply recount who testified and what they testified to, specifically using the terms "testified that," "stated that," or "reported that." Appellant's App. Vol. 2 at 226-231.  Other findings simply report what certain witnesses "described," "expressed," or "believed." *Id.* at 227-28.  Pursuant to Indiana Trial Rule 52(A), a court that enters findings sua sponte "shall find the facts specially and state its conclusions thereon."  Critically, "findings which indicate that the testimony or evidence was this or the other are *not* findings of fact." *Parks*, 862 N.E.2d at 1279 (quoting *Moore v. Ind. Fam. & Soc. Servs. Admin.*, 682 N.E.2d 545, 547 (Ind. Ct. App. 1997)) (emphasis in original).  Rather, findings "must indicate, not what someone said is true, but what is determined to be true, for this is the trier of fact's duty." *Id.*  (quoting *Moore*, 682 N.E.2d at 547).  "[T]he trier of fact must adopt the testimony of the witness before the 'finding' may be considered a finding of fact." *Id.*  (quoting *In re Adoption of T.J.F.*, 798 N.E.2d

867, 874 (Ind. Ct. App. 2003)). Any statements in the court's order that amount to improper findings, while "not harmful error[,]" are "mere surplusage" to be disregarded. *Id.* (quoting *Perez v. U.S. Steel Corp.*, 426 N.E.2d 29, 33 (Ind. 1981)).

[15] Looking then at the trial court's fact-finding order here, and excluding the many findings which simply restate the names of trial witnesses and their testimony, we are left with only these substantive findings:

> 10. [The first visit supervisor] stopped visits after the third visit recommending that they be done by a therapist due to the concerns she noted during visits.
>
> * * *
>
> 18. [The second visit supervisor] was also concerned that mother allowed [G.V.] to play in the water without an appropriate change of clothes with how cold it is outside.
>
> * * *
>
> 20. [The second visit supervisor] observed [G.V.] wanting to not be held by mom and preferring to spend time with [A.V.] [G.V.] was observed avoiding her mother physically and preferring [A.V.]
>
> * * *
>
> 30. Mother[']s response to [the FCM] when asked about physical discipline is that she was smacked as a child and that when you

smack someone it is going to leave a red mark when [confronted] about marks left on [A.V.]

31. [Mother] also admitted to [the FCM] that she has left red marks on [G.V.] before as well.

* * *

35. [Mother] told [the] FCM [] that it is in her right to use corporal punishment on her children and DCS should not be involved.

* * *

44. [Father M] has concerns about [A.V.] being unsupervised with her mother due to concerns of emotional and physical abuse she would endure by her mother.

* * *

55. Mother agreed that her and [A.V.'s] relationship could use some help.

Appellant's App. Vol. 2 at 227-229.

[16] The record reveals that a majority of the remaining findings also recite hearing testimony—albeit without using the words "testified," "reported" or "stated"—rather than indicate the court's determination of the facts. Nonetheless, on the basis of its findings, the court concluded that G.V. was a CHINS under both the neglect and abuse CHINS statutes. *See* Appellant's App. Vol. 2 at 226. But

even if we generously construe all the findings above as proper, they are insufficient to support the trial court's conclusion and judgment that G.V. is a CHINS under either statute. *Cf. In re S.L.*, 997 N.E.2d 1114, 1122 (Ind. Ct. App. 2013) (finding no error in the trial court's order when it "contain[ed] thoughtful findings that flow[ed] from [the] evidence").

[17] Because "these findings related to the only issues for our review" on appeal, namely, the elements of each CHINS statute, "we are not at liberty to scour the record to find evidence to support the judgment." *Parks*, 862 N.E.2d at 1280. We acknowledge that the trial court was not required to enter any findings at all. However, it chose to do so, and in that endeavor, it was bound by Trial Rule 52(A) to "find the facts specially and state its conclusions thereon" rather than simply provide a play-by-play of the fact-finding hearing. As it stands, the court's fact-finding order leaves us unable to determine whether its judgment that G.V. is a CHINS was based on the proper considerations. Thus, given the deficiency of the court's findings, we must remand to the trial court with instructions that it enter proper findings of fact in support of its judgment.[7]

---

[7] Mother also presents arguments that the trial court abused its discretion as to its dispositional decree. *See* Appellant's Br. at 36. However, we cannot determine any error in the dispositional decree without first determining whether the trial court erred in finding G.V. was a CHINS. Because the findings are insufficient for us to pass upon that inquiry, we also cannot adequately address Mother's arguments as to the dispositional decree.

## Conclusion

Because the trial court's order was mostly comprised of improper findings, and the remaining findings were insufficient to support its judgment that G.V. is a CHINS, we are unable to determine what error, if any, the trial court committed. Therefore, we remand this matter to trial court for it to enter proper findings of fact and conclusions of law.

Remanded for the entry of proper findings of fact and conclusions of law.

Bradford, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

Suzy St. John
Indiana University Robert H. McKinney School of Law Appellate Clinic
Indianapolis, Indiana

Sarah Y. Faulkner
Indiana University Robert H. McKinney School of Law Appellate Clinic
Certified Legal Intern
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE INDIANA DEPARTMENT OF CHILD SERVICES

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE KIDS' VOICE OF INDIANA

Katelyn Bacon
Indianapolis, Indiana